No. 820.

ROBERT B. TODD VS. RICHMOND, SHERIFF, ET AL.

An injunction to stay the execution of a judgment may be sued out wherever an attempt is made to execute it, without reference to the place or court where the judgment was rendered or where the judgment creditor resides.

A third opposition lies only in two cases; — (1) where the ownership of the thing seized is claimed; (2) where a privilege is claimed which entitles the opponent to be paid by preference out of the proceeds of sale, and when such opposition is made, an order must be made to the sheriff to retain the proceeds in his hands.

A suit which is virtually to enforce an incorporeal right, unaccompanied by injunction, and not for either of the cases where third opposition lies, is a purely personal action, and must be brought at the domicile of the defendant.

A claim evidenced by notes, secured by a mortgage, the validity of the latter being in contest, is a litigious right which attorneys at law are not permitted to purchase.

APPEAL from the District Court for Morehouse.  PARSONS, J.

*David Todd* for Plaintiff Appellant.    *Bussy* for Defendants

EGAN, J.   David Pipes obtained a judgment in the District Court of Morehouse against one Parks individually and as administrator of his deceased brother.   His representatives, residents of the Parish of East Feliciana, where he also resided when the judgment was obtained and at his death, caused an execution to issue upon the judgment and seized certain lands lying in the Parish of Morehouse,

Todd *vs*. Richmond.

which the sheriff was proceeding to sell when the present plaintiff instituted this suit in the District Court of Morehouse claiming to be the transferee and owner of one-half interest in the judgment and all its accessories, and asking that he be so decreed, and that one-half of whatever should be realized under the *fi. fa.* should be paid over to him.

The sheriff accepted service, and the heirs and representatives of Pipes were regularly served with citation at their place of residence, East Feliciana.

Numerous defences have been set up and elaborately argued pro and con of which, however, it is only necessary to notice two — one by reason of its own importance, and the other because of the district judge having made it the basis of his judgment — we think erroneously.   We shall notice the latter first.

It was the plea of *res adjudicata* set up against the present plaintiff by reason of a judgment in an hypothecary action instituted by David Pipes, the judgment creditor, to enforce his judicial mortgage resulting from the registry of this judgment against certain lands in the posssession of one Nosworthy.   Of this it is only necessary to say that neither Todd nor his alleged transferror Brigham were parties to that suit, and of course it could not be and was not *the thing adjudged* as to them or either of them.

We are not now called upon to determine what, if any effect, upon the rights now asserted by him was produced by any connection of Todd otherwise with that litigation.

The judge *a quo* erred in maintaining the plea.   The defendants, heirs and representatives of David Pipes, excepted to the jurisdiction of the court and claimed the right to be sued at their domicil in East Feliciana.

This exception is undoubtedly good, unless the nature of the present action brings it within some exception to the general rule.   It has been often and properly held and may now be considered that an *injunction* to stay or regulate tho execution of a judgment may be sued out wherever the same is sought to be executed without reference, either to the place where the judgment was rendered or where the plaintiff resides.

The plaintiff seems to have recognized this, for the petition alleges

Todd *vs.* Richmond.

the necessity of, and prays for injunction, which however was never obtained, no affidavit having been made, bond filed, or order or writ issued.   The case is therefore not within that exception.

The only other exception at all pertinent is that which authorizes the filing of third oppositions in the court which issues the *fi. fa.* and which for that reason is charged with the distribution of the funds. The plaintiff himself insists that this is not a third opposition, but what he terms a petitory action to have himself decreed owner of one-half the judgment and all its accessory rights, including that to receive half the proceeds of sale.

Technically and strictly a third opposition lies in only two cases : —

1. Where the ownership of the thing seized is claimed.

2. Where a privilege is claimed which entitles the opponent to be paid out of the proceeds of sale in preference to the seizing creditor.

The present case sets up neither ground.

The plaintiff does not claim the property seized nor does he claim any privilege upon it.   But were it in the power of the court, against his own argument and admissions, to consider this in other respects as likened to a *third opposition*, though not strictly and technically so, it is fatally defective as such for the reason that no order to the sheriff to retain the proceeds of the sale in his hands subject to the further order of the court was either asked for or obtained.

The sheriff, then, in the absence of injunction or of the usual and necessary order in cases of third opposition to retain the proceeds, was without power, authority, or right, to refuse to pay over to the seizing creditor in whose name the judgment and writ was, and who provoked its issuance, the proceeds of the sale.

Had he attempted to do so he would have been at once ruled and compelled to pay over, or would have been suspended or removed from office, besides being punishable for contempt.

In point of fact, it is both alleged and proved, that without let or hinderance on the part of the present plaintiff who had the remedies of the law open to him, the sheriff did as he was legally bound to do, pay over the entire proceeds of sale to and under the order of the seizing creditor who obtained judgment or his representatives.

Injunction is the process specially and peculiarily applicable to prevent one from doing an act which another contends may be injurious to him, or impair a right which he claims.　C. P. 296.

It is a conservatory writ, an equitable remedy, which a party may obtain provisionally on bringing his action (C. P. 208) and the right of the plaintiff to execute a judgment, which he has obtained for a sum of money, can only be suspended upon a petition, affidavit and bond for injunction.　See 17 A. 306, State *v.* Judge, Fourth District; 18 A. 110; 19 A. 188.

It would then be both unjust and legally impossible for us by our decree to compel the sheriff to pay the whole or any part of the proceeds of the sale to the plaintiff in this suit.

There is then no question before this court, and there was none before the District Court of the distribution of a fund under its control, for whatever the plaintiff Todd might have done, he did not take the steps necessary to preserve that control in the District Court of Morehouse.

Stripped then of that feature of the case, nothing is left to be determined but the naked question of ownership, *vel non*, of one-half interest in the Parks judgment, the evidence of a debt, an incorporeal right to be disputed and determined in a purely personal action against the succession and heirs of Pipes, whose domicil was in the parish of East Feliciana, and where consequently the suit should have been brought.

For the sheriff has, and claims, no interest in this controversy. He was a mere stakeholder against whom in any form of action no other decree could have been asked or obtained than one directing to whom he should pay over the money.　It is, however, argued that the defendants filed an answer and thereby accepted the jurisdiction of the District Court of Morehouse, which they cannot be permitted afterwards to decline.

The law regulating jurisdiction *ratione personæ* has been held, and we think correctly, to be declaratory of a public policy as well as of an individual right, and that therefore and by its own terms, a defendant is not permitted to consent to be sued out of the jurisdiction of his domicil.

If by merely filing an answer, instead of a formal written consent,

the law can be evaded, it may and will be done in every case when it is the pleasure of the parties.

This is forcing the evil which was intended to be guarded against by the Act of 1861, now embodied in Art. 162 of the C. P.

*Judgment reversed, and the exception of the defendant to the jurisdiction maintained.*

SPENCER, J., absent.

The above opinion was read at the term for 1878, and a rehearing was granted. The rehearing was had in 1879 when WHITE, J., sat in place of EGAN, J., deceased.

After re-stating the case and repeating the conclusions of the former opinion,

DEBLANC, J. Was the sale from Brigham to Todd the sale of a litigious right? When he purchased, that claim was recognized by a judgment, which — as to the original debtors — was final; but — at *that date* — the 3rd of February, 1871, there was pending in the jurisdiction of one of the tribunals in which he exercises his profession, a suit commenced in 1869, decided in 1873, the sole object of which was to enforce, against a third possessor, the judgment which he had partly acquired from Brigham.

The original debtors — it appears — are absolutely insolvent, and alone a successful termination of the suit against the third possessor, and during the pendency of which Mr. Todd purchased — could, as it did, secure a partial satisfaction of said judgment.

In the answer filed by the third possessor in the suit brought against him, to subject his property to the judicial mortgage, he charged that the judgment, from the recording of which that mortgage resulted, was an absolute nullity; that an appeal had been taken therefrom and that the defendant in said suit had "fraudulently colluded" with the first purchasers of said judgment to dismiss that appeal, in order to avoid the effects of an already acquired prescription.

He further charged that if Pipes had ever had a mortgage on the property — and that he denied — that mortgage was released by Parks' surrender in bankruptcy and, if not released, that Pipes had transferred, for less than one thousand dollars, the judgment from

which that mortgage resulted; that said transfer was that of a litigious right, and that — if said mortgage were decreed to exist, he had and claimed the privilege of reimbursing the amount thus paid, *and free his property from its effects.*

"A right is litigious whenever there exists a suit and contestation *on the same.*" C. C. 2653 (2623).

In Consolidated Association *v.* Comeau, this court said: "The intervenors reply that the case does not fall within the prohibition prescribed by Articles 2422 and 2623 of the Civil Code, because the title to the property is not in dispute. That the bank does not pretend to be the owner of the land, but merely claims a mortgage upon it."

The argument — the court added — appears to us unsound. It conflicts with the fair intendment and spirit of the law. So far as the naked title to the land was concerned, there was, indeed, no litigation. But so far as the *freedom from encumbrance* was involved, the right purchased was litigious. It was, at the moment of the purchase, a litigated question, whether the mortgage was originally valid or invalid — whether it had, or had not, lost its effect by prescription, or the failure to re-inscribe. * * * So far as the question of *encumbrance* was involved, and so far as they avail themselves of their purchase to resist the claim of the plaintiff, the purchase is a nullity, and can confer no rights. 3 A. 554; 2 A. 259.

In the suit against the third possessor, the defence was — on the face of the papers — a serious one; he had assailed as being an absolute nullity the judgment sought to be enforced against him, contested the validity of the mortgage, charged that the parties to the original transfer had "fraudulently colluded" together to dismiss an appeal and destroy his rights, and it was — during the pendency of that suit — that Mr. Todd accepted a transfer of the assailed judgment and contested mortgage. The date of the transfer, which was made after the filing of the answer in which those defences were urged, and before the final decree rendered in that suit, leaves no doubt that Mr. Todd did purchase a litigious right. C. C. (2422) 2447 — 2653 (2623).

When Mr. Todd purchased the claim evidenced by the notes, the mortgage securing the notes and the judgment recognizing the

mortgage, he knew that the claim, the mortgage and the judgment were then being, and — and for a long time before — had been judicially contested.

He bought a right, the exercise of which was — partly at least, and certainly so far as the mortgage was concerned — suspended by a lawsuit, and is now seeking to recover a share of the proceeds realized by that suit, without which none could have been realized.

The litigation pending at that time, and which ended by a compromise with the third possessor, extended — not to exclusively an isolated part of the transaction, which — however blameless it appears to have been in this instance — was undoubtedly embraced in the class of those which are prohibited by law.

The fact that the plea of *res judicata* was not sustained by us, leaves unremoved and unremovable the more important fact that a lawsuit, in which the mortgagee was, it seems, but partly successful was then pending to enforce against the property of the third possessor the transferred and disputed mortgage.

For these reasons, it is ordered and adjudged that our former decree remain undisturbed.

Dissenting opinion.

SPENCER, J.   I understand the admitted facts in this case to be,

1. That Pipes had obtained a final judgment against Parks.

2. That after said judgment had become final, Pipes sold one-half interest in it to Brigham.

3. That after having sold said interest to Brigham, Pipes brought an hypothecary action in his own name against Nosworthy, to enforce said judgment as a judicial mortgage against certain property in his hands.   Brigham was no party to this suit, and is not shown to have in any way sanctioned or authorized it.

4. Whilst this hypothecary suit of Pipes *v.* Nosworthy was pending, Brigham transferred his half interest in the judgment of Pipes *v.* Parks, to R. B. Todd.

5. Todd was in no way party to the suit of Pipes *v.* Nosworthy.

6. There was judgment in favor of Pipes against Nosworthy, subjecting the land to the judicial mortgage.

7. Execution having issued, Nosworthy's land was seized, and about to be sold under this decree, when Todd filed a third oppo-

sition claiming that he was owner of one-half the judgment of Pipes *v.* Parks, and entitled to one-half the proceeds of the mortgaged property about to be sold, which he prayed to have paid over to him.

Among the defences set up against Todd, the only one which this court sustains is that he purchased a litigious right.

In my opinion this ruling is erroneous. Art. 2653, C. C., declares that "*a right* is said to be *litigious*, whenever there exists a suit and contestation *on the same.*"

What did Todd buy? He bought Brigham's right and interest in and to the judgment of Pipes *v.* Parks. Was Brigham's right in that judgment in contest in the case of Pipes *v.* Nosworthy? If *it* was not in contest and litigation in that suit, then it was not litigious. It is *the right* that must be in contest. It is not sufficient that there be a contest about *the thing that is the subject of that right.* Now how could Brigham's right in the judgment be in contest in a suit to which he was *neither party nor privy?*

If Brigham's right was the subject of that litigation, he of necessity would have been bound by any decree that might have been rendered therein. Is it not manifest that had there been a judgment against Pipes it would not have been *res adjudicata* against Brigham, and that he would have been at perfect liberty to have commenced a suit against Nosworthy in his own name? Indeed, I understand my brethren to hold in this case that the judgment in Pipes *v.* Nosworthy is not the thing adjudged as to Todd or Brigham either, and that although Todd cannot maintain this suit, they reserve Brigham's rights to assert the same pretensions.

If I am the owner in common with " B." of a piece of property, and " A." brings suit aginst " B." for that property — to which suit I am a stranger — is my right to that property in contest?

And if pending that suit, I sell my right to " C." does he acquire a litigious right? How can a right be litigious, when the pending suit cannot affect it?.

If Brigham had been party or privy to the suit of Pipes *v.* Nosworthy, then Todd's purchase would have been vicious.

When we look at the logical consequences of the decision in this case, its error becomes manifest.

Under its operation, my property may be rendered virtually inalienable, by proceedings to which I am a stranger, and of which I am perhaps ignorant.

All that would be necessary to effect this result will be for "A." and "B." to get up a litigation between themselves, touching their rights thereon — however unfounded — and as long as they are pleased to keep up that suit, nobody dares buy from me, under pain of nullity and damages, if a lawyer or court officer, and under serious disabilities if not such officer.

Under this doctrine I may execute my obligation to you for money, and then by getting Tom, Dick or Harry to sue me for its amount on a claim of being its holder, render the obligation in your hands worthless by destroying your liberty to transfer it.

I think this is pushing the doctrine relative to litigious rights too far, and I cannot give it my assent.